# EXHIBIT 3

Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
Louise Jillian Paris, SBN 347801
**OMNI LEGAL GROUP**
2029 Century Park E, Suite 438
Los Angeles, California 90067
Phone: 310.276.6664
Facsimile: 310.305.1550
omid@omnilg.com
ariana@omnilg.com
jillian@omnilg.com

Attorneys for Plaintiff
JOBIAK, LLC

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOBIAK, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>ASPEN TECHNOLOGY LABS, INC., a Colorado Corporation,<br><br>Defendant. | Case No.: 2:23-cv-8728<br><br>**PLAINTIFF JOBIAK, LLC'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date: January 29, 2024<br>Time: 1:30 p.m.<br>Courtroom: 7D<br>    350 West 1st Street<br>    Los Angeles, CA 90012 |

# TABLE OF CONTENTS

| | Page |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES……………. | 4 |
| I. THE COURT HAS PERSONAL JURISDICTION OVER ASPEN TECHNOLOGY LABS, INC. AND VENUE IS APPROPRIATE IN THE CENTRAL DISTRICT………………….. | 4 |
|    A. Aspen Purposefully Directed Its Activities At Southern California………………………………………………………………. | 4 |
|    B. The Court's Exercise Of Jurisdiction Would Be Reasonable…….. | 5 |
| II. VENUE IS PROPER IN THIS FORUM ON ALL CLAIMS………... | 8 |
| III. JOBIAK'S COPYRIGHT CLAIM IS ADEQUATELY PLEADED… | 8 |
| IV. JOBIAK'S CFAA AND CDAFA CLAIMS ARE ADEQUATELY PLEADED……………………………………………………………. | 10 |
| V. JOBIAK'S DMCA CLAIM IS ADEQUATELY PLEADED……….. | 11 |
| VI. THERE IS NO AUTHORITY EXCLUDING THE CDAFA FROM BEING APPLIED TO CONDUCT OUTSIDE OF CALIFORNIA CAUSING EFFECTS WITHIN CALIFORNIA…………………… | 12 |
| VII. CONCLUSION…………………………………………………... | 13 |

# TABLE OF AUTHORITIES

Page

Cases

Axiom Foods, Inc. v. Acerchem International, Inc., 874 F.3d 1064
    (9th Cir. 2017)……………………………………………………… 4, 5

Caruth v. Int'l National Psychoanalytical Ass'n, 59 F.3d 126
    (9th Cir. 1995)……………………………………………………… 7

DocMagic, Inc. v. Ellie Mae, Inc. 745 F.Supp.2d 1119 (N.D. Cal. 2010)……. 11

Harris Rutsky & Co. Ins. Services v. Bell & Clements Ltd.,, 328 F.3d 1122
    (9th Cir. 2003)……………………………………………………… 8

hiQ Labs, Inc. v. Linkedin Corp., 31 F.4th 1180 (9th Cir. 2022)……………….. 10

Impossible Foods, Inc. v. Impossible X, LLC, 80 F.4th 1079
    (9th Cir. 2022)……………………………………………………… 4

Kregos v. Associated Press, 937 F.2d 700 (2d Cir. 1991)……………………... 10

Panavision Int'l v. Toeppen, 141 F.3d 1316 (9th Cir. 1998)…………………… 7

Roth v. Garcia Marquez, 942 F.2d 617 (9th Cir. 1991)……………………….. 8

Southwest Airlines Co. v. Kiwi, 2021 U.S. Dist.
    LEXIS 207508 (N.D. Texas 2021)……………………………………. 5

WhatsApp Inc. v. NSO Grp. Techs., Ltd., 472 F. Supp. 3d 649
    (N.D. Cal. 2020)……………………………………………………. 8

Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208 (5th Cir. 1999)………………… 6


Statutes

California Penal Code §502……………………………………………… 13


Regulations

37 C.F.R. §202.3(b)(5)(ii)…………………………………………………… 9

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's California UCL claim is subject to copyright preemption, as defendant contends. Other than that, defendant's arguments should not prevail. The court has personal jurisdiction over defendant, this action is properly venued in the Central District of California, and the individual claims are adequately pleaded.

## I.

## THE COURT HAS PERSONAL JURISDICTION OVER ASPEN TECHNOLOGY LABS, INC. AND VENUE IS APPROPRIATE IN THE CENTRAL DISTRICT

There are three requirements for a court to exercise specific jurisdiction over a non-resident defendant, such as Aspen Technology Labs, Inc. ("Aspen"). The defendant must purposefully direct its activities toward the forum, the claim must be one which arises out of or relates to defendant's forum-related activities, and the exercise of jurisdiction must be reasonable, comporting with traditional notions of fair play and substantial justice. Plaintiff Jobiak, LLC ("Jobiak") bears the burden of establishing a prima facie case on the first two requirements and, if Jobiak carries its burden, then Aspen must come forward with a compelling case that the court's exercise of jurisdiction would not be reasonable. Impossible Foods, Inc. v. Impossible X, LLC, 80 F.4th 1079, 1086 – 1087 (9th Cir. 2022).

### A. Aspen Purposefully Directed Its Activities At Southern California

All of the claims alleged against Aspen are torts of various kinds. Thus, to assess "purposeful direction" the "effects" test is employed. Aspen must have committed an intentional act, expressly aimed at the forum, causing harm that Aspen knows is likely to be suffered in the forum state. Axiom Foods, Inc. v. Acerchem International, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017). Aspen makes much of the fact that Jobiak's complaint does not alleged that the server(s) scraped were located in California, but current thinking on this subject is that the location of the server(s) is something that is inherently fortuitous, and thus does not factor at all into

jurisdictional analysis. Southwest Airlines Co. v. Kiwi, 2021 U.S. Dist. LEXIS 207508*7 (N.D. Texas 2021) ("The Court is not persuaded that the location of Southwest's servers here in Dallas alone can be a basis for personal jurisdiction, as the location of Southwest's servers could be merely fortuitous."). The fact that Jobiak's headquarters is not in California is also of little to no importance, because the jurisdictional inquiry is focused on Aspen's contacts with California, and not Jobiak's contacts. Axiom, 874 F.3d at 1068.

Copyright infringement, violation of the Computer Fraud and Abuse Act, and Violation of California's Comprehensive Computer Access and Fraud Act, and of California's UCL are all torts or in the nature of torts, and all were alleged to have been the intentional acts of Aspen. (Complaint, ¶¶11, 22, 23, 26, 27, 34, 44, 46, 53, 54, 63.) Accordingly, Jobiak has carried its burden of making a *prima facie* case that Aspen's actions were intentional.

Aspen's website boasts that it "is a leader in recruitment technology solutions" and identifies seven "featured clients:" careerbuilder, ZipRecruiter, Amazon, totaljobs, yourmembership, broadbean, and coursera. Coursera, ZipRecruiter, Careerbuilder and Amazon all are licensed to do business in California. (Khalifeh Dec. ¶3, exh. 1.) The fact that Amazon, though headquartered in Washington, does a vast amount of business in and makes millions of home deliveries in California is so undeniable and clearcut that judicial notice may be taken of it under Fed. R. Evid. Rule 201(b)(1), and plaintiff requests that the court take such notice. Additionally, one of Amazon's well-known subsidiaries is Whole Foods, which Amazon purchased in 2017, and has 95 stores in California including approximately 20 stores in Los Angeles County alone. (Khalifeh Dec. ¶4, exh. 2.)

A key Aspen market sector for Aspen's business is "recruitment technology," including Hosted Job Boards, Corporate Career Center Solutions and Jobs Data Management. (Khalifeh Dec. ¶3, exh. 1.) The way Aspen obtains the jobs information it compiles, packages and sells to its clients is described by Aspen as

"job scraping or job wrapping: we scrape the web for data for open jobs (aka job listings). We provide this data to our customers who run job boards – which function, as you probably realize, as search engines for people looking for specific types of work." (Khalifeh Dec. ¶5, exh. 3.) It takes little imagination to conclude that with at least one "featured client" – Amazon and its Whole Foods subsidiary – having an enormous labor force engaging in billions of dollars' worth of economic activity in Southern California, Aspen's efforts to provide "recruitment technology" are, to a significant extent, expressly aimed at California. Jobiak has carried its burden of making a *prima facie* case that Aspen's acts were expressly aimed at California.

As alleged in the complaint, Jobiak provides an Artificial Intelligence-based recruitment platform which offers an automated database for job postings. Aspen is, essentially, a direct competitor of Jobiak. (Complaint ¶¶1 - 2.) Further, Jobiak has clients, contracts and employees located within the Central District, and Aspen's scraping of Jobiak's proprietary ALLJOBS database caused Jobiak losses in the Central District. (Complaint ¶¶3, 11, 25.) Based on its accumulation of data by scraping across the internet, it was foreseeable to Aspen that the scraping of a competitor's data base would cause that competitor losses here if the competitor, like Jobiak, has business, contracts, and clients in the Central District. While Jobiak concedes that Aspen did not specifically target Jobiak in this forum, it was nonetheless reasonably foreseeable that Jobiak, or any other competitor of Aspen with clients and contracts in the forum, would be damaged in the forum by tortious activities such as those that Jobiak alleges Aspen has committed. Accordingly, Jobiak has carried its burden of making a *prima facie* case that Aspen knew harm was likely to be caused in this forum.

### B. The Court's Exercise Of Jurisdiction Would Be Reasonable

Where specific jurisdiction exists, as here, Aspen "must make a compelling case" that the forum is unreasonable. Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999). It is rare to say the assertion is unfair after minimum contacts

have been shown. Even when litigation in the forum would 'place a burden on the defendant," the interests of the forum and the plaintiff "justify even large burdens on the defendant" once minimum contacts are established. Id.

Of the seven factors to consider, most of them do not favor a claim that the Central District is an unreasonable forum.

First, as previously discussed, Aspen has at least one enormous client, Amazon and its Whole Foods Market subsidiary, with an enormous workforce engaging in billions of dollars' worth of economic activity throughout California, including the Central District. The degree of Aspen's purposeful interjection into California to service that client can reasonably expected to be high.

Second, with pandemic-honed litigation tools, such as remote depositions and the ability to attend court hearings other than trials remotely, there will be little difference in the burden to Aspen between defending here or defending in any other forum. Similarly, it appears that much of the evidence will likely be in electronic format, which makes finding and producing it essentially independent of the physical location of the forum.

Third, this is not a case involving a citizen of another country, so the third factor does not apply.

Fourth, California has a strong interest in providing remedies to persons harmed within its boundaries, which is precisely what Jobiak alleges happened in this case.

Fifth, in considering which forum could most efficiently resolve this dispute, courts "focus on the location of the evidence and the witnesses." Caruth v. Int'l National Psychoanalytical Ass'n, 59 F.3d 126, 129 (9th Cir. 1995). However, this factor is no longer weighed heavily due to advances in technology. Panavision Int'l v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998). Here this factor is likely neutral, given that both litigants' principal places of business are outside of California.

The sixth factor of plaintiff's convenience is also given little weight. WhatsApp Inc. v. NSO Grp. Techs., Ltd., 472 F. Supp. 3d 649, 677 (N.D. Cal. 2020).

On the seventh factor of the existence of an alternative forum, Jobiak concedes that on the facts known to date, the District of Colorado and very likely, the District of Massachusetts, would be available for this litigation.

Of the seven factors, three favor plaintiff's choice of forum, two are neutral, and two favor Aspen. In such situations, "defendant has not carried its burden to present a compelling case that exercising jurisdiction would be unreasonable." WhatsApp, id.; *see also,* Harris Rutsky & Co. Ins. Services v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003) ("The balance is essentially a wash, since some of the reasonableness factors weigh in favor of [defendant], but others weigh against it."); *see also,* Roth v. Garcia Marquez, 942 F.2d 617, 625 (9th Cir. 1991) (finding exercise of jurisdiction was reasonable although only two factors favored plaintiff while three favored defendant).

## II.

## VENUE IS PROPER IN THIS FORUM ON ALL CLAIMS

As Aspen's Motion notes, venue for copyright claims essentially boils down to whether there is personal jurisdiction over the copyright defendant in the forum. (Motion, p. 10.) There is personal jurisdiction over Aspen in this forum, so the venue requirement is satisfied as well.

Proper venue for Jobiak's other claims exists if there is personal jurisdiction over Aspen in this district. There is such jurisdiction for the reasons previously discussed, and venue is appropriate.

## III.

## JOBIAK'S COPYRIGHT CLAIM IS ADEQUATELY PLEADED

Aspen's first attack on Jobiak's copyright claim is that the observed copying first noticed by Jobiak occurred in March 2022, yet Jobiak's Group Registration for Automated Database is stated to be for published updates from September 1, 2022

to November 30, 2022. (Complaint, exh. 1; Motion, p. 14.) This interpretation misreads the relevant regulation. 37 C.F.R. §202.3(b)(5)(ii), under the general heading "Group Registration of Related Works: Automated Databases," provides that:

> **(ii)** A group registration may be made on one application for both a database published on one date, or if unpublished, created on one date, and also for its copyrightable revisions, including updates covering a three-month period in the same calendar year.

Review of exhibit 1 to the Complaint, the registration, shows that Jobiak obtained a registration for a database published on November 30, 2022, plus the three months of copyrightable revisions, including updates, to that database during the three-month period from September 1, 2022 to November 30, 2022. The underlying, that is, not updates portion, of the database created in 2022 is not excluded, as Aspen claims, but included, as copyrighted material. Aspen's claim that the complaint refers to Aspen's copying of uncopyrighted material is incorrect, as on the face of the registration, every part of the database created in 2022 is included, along with the updates during the September through November 2022 period.

After Aspen's exclusion claim, it then asserts that Jobiak failed to allege that Exhibit B to the complaint was part of the database covered by the copyright registration. On the contrary, Jobiak quite clearly makes that allegation at paragraphs 18 and 19 of the complaint. Jobiak's copyright claim is adequately pleaded, and includes all of the database created in 2022 and the three months of updates to it.

The foregoing applies as well to Aspen's next claim that Jobiak failed to follow the prerequisites for a copyright infringement claim by filing to register the material about which the complaint alleges was infringed. Jobiak did register the material; it is part of the 2022 database, exactly as Jobiak alleges.

Finally, Aspen asserts at page 16 of its Motion that Jobiak has failed to sufficiently allege what it calls a "derivative infringement." Supposedly, this is

because Jobiak does not claim that Aspen's selection and organization of factual material is "the same" as Jobiak's, and because Jobiak "admits that Aspen Tech uses a different data base" than Jobiak. (Motion, p. 16, lns. 19 – 23.)

Aspen would do well to review the Kregos decision that it cites. Kregos v. Associated Press, 937 F.2d 700 (2d Cir. 1991). The Kregos appellate panel reversed the district court's decision that plaintiff's baseball form meant to predict the outcome of pitching duels lacked sufficient indicia of independent selection, organization, and creativity to qualify for a copyright registration. The Court's analysis is instructive. First. it recognized that the pitching statistics that would fill in the Kregos form and other, competing forms, would include selections from the same universe of baseball pitching statistics, regardless of their source. Id. at 703 – 704. Second, the court recognized that forms using fewer than all of the same pitching statistics that Kregos used could infringe the Kregos form if the organization and selection principles were too similar; in other words, exact identity of organization and selection is not required for infringement of a compilation. Id. at 705.

## IV.

## JOBIAK'S CFAA AND CDAFA CLAIMS ARE ADEQUATELY PLEADED

The only issue before the 9th Circuit in hiQ Labs, Inc. v. Linkedin Corp., 31 F.4th 1180 (9th Cir. 2022) was whether Linkedin could use the CFAA to prevent scraping of information regarding Linkedin members that was in their public profiles, and generally available to any other Linkedin member. 31 F.4th at 1184 – 1185. The only issue decided was that in the pre-trial phase of the litigation, hiQ was entitled to an injunction against Linkedin preventing hiQ from accessing that generally available information. Id. at 1202. hiQ has very limited relevance to this action because Jobiak's ALLJOBS database is not generally available to the public; instead, individuals or business entities are required to obtain a license and access credentials to use specified data, and access to and use of the data is restricted in a

variety of ways. (Khalifeh Dec, ¶6; Complaint ¶¶23, 43.) Aspen is comparing apples to oranges.

As for the allegations of damages under the CFAA, Jobiak's complaint is adequate. The allegation found inadequate as a formulaic recitation in <u>DocMagic, Inc. v. Ellie Mae, Inc.</u> 745 F.Supp.2d 1119, 1150 (N.D. Cal. 2010) was:

> "Ellie Mae has suffered damages and loss . . . including, without limitation, harm to Ellie Mae's data and/or computer(s) and other losses and damages in an amount to be proven at trial, but in any event, over $5000 aggregated over a one-year period."

Jobiak's allegation at paragraph 48 of the Complaint is:

> "Plaintiff has suffered damage and loss by reason of these violations, including, without limitation, harm to Plaintiff's computer systems, expenses associated with being forced to investigate and respond to the unauthorized access and abuse of its computers and servers, and other losses and damage in an amount to be proven at trial, in excess of $ 5,000 aggregated over a one-year period."

Jobiak's allegation is still "formulaic" but does contain more factual detail referencing expenses of investigation and response than the allegation deemed insufficient in <u>DocMagic</u>. If the court deems Jobiak's allegation of damages inadequate, then it should grant leave to amend, which is exactly what Ellie Mae was granted. <u>DocMagic</u>, <u>id</u>.

## V.

## JOBIAK'S DMCA CLAIM IS ADEQUATELY PLEADED

Aspen once again claims that Jobiak's website is available to the general public, as if it that makes a difference. Of course Jobiak wants the general public to know of the services it can provide. What is <u>not</u> "available to the general public" is Jobiak's proprietary, copyrighted ALLJOBS database. Access to portions of that database is protected by protocols, restricted access and other means, as alleged at paragraphs 43 and 44 of the Complaint:

11

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

43. As a precautionary measure against computer fraud and abuse, Plaintiff has implemented a comprehensive security strategy. This includes utilizing AWS servers and the security features they provide, restricting access to the job listings to prevent scraping and permitting only specific IP addresses to access the listings and implementing protocols designed to detect and prevent an unusually high volume of requests originating from a single IP address within a short time frame.

44. Defendant knowingly and intentionally accessed Plaintiff's computers and servers without authorization or in excess of authorization. They have circumvented various technological barriers Plaintiff has employed to protect its computers, servers, and automated database against unauthorized access.

Aspen appears to believe that an allegation of "password protected" has a magical affect, but cites no case requiring that allegation. There is no functional difference between a "password" and the cumulative effect of the protective measures implemented by Jobiak. Jobiak's allegations are sufficient at this stage of the litigation, and Aspen will have the opportunity to demonstrate in the future, if it can, that Jobiak's "room" of proprietary data is or was "unlocked."

## VI.

## THERE IS NO AUTHORITY EXCLUDING THE CDAFA FROM BEING APPLIED TO CONDUCT OUTSIDE OF CALIFORNIA CAUSING EFFECTS WITHIN CALIFORNIA

Aspen's authority for the claim that the CDAFA cannot apply to this action is the alleged ruling of the Court in the Southern District of California on June 26, 2013 dismissing a CDAFA claim based on access from one computer outside of California to another outside of California. (Motion, p. 22.) This is the claimed ruling, but the fact of the matter is that this decision or opinion is not available through Lexis, not available through a general Google search, and does not appear on the docket for the case in the Southern District of California available through PACER, which contains no Orders of any kind filed on June 26, 2013. (Khalifeh Dec. ¶7.) To the extent that this phantom decision is mentioned in other cases that are available through Lexis

or through a Google search, it appears to be based on the language of Penal Code §502(a), which provides in part that:

> "The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, <u>and others within this state</u> that lawfully utilize those computers, computer systems, and data."

The above language is followed by §502(b)(1) through (15), which all define specific terms such as "access" and "computer system," and none of which specify any particular location, either within or without California, for the items or systems defined.

Before declaring that the CDAFA does not apply to this action based on the very scant authority offered, it would be useful to develop the facts further so that a fuller record can underlay the court's decision on the issue.

## VII.
## CONCLUSION

Aspen's Motion should be denied. Jurisdiction and venue are proper in this district, and all of Jobiak's claims are sufficiently pleaded to proceed with the fact-finding stage of the litigation.

Dated: January 12, 2024                    **OMNI LEGAL GROUP**

 

<u>/s/ Omid E. Khalifeh</u>
Omid E. Khalifeh
Ariana Santoro
Louise Jillian Paris
Attorneys for Plaintiff
Jobiak, LLC