Xinlin Li Morrow (State Bar No. 281707)
Zhener Low (State Bar No. 355279)
xinlin@moni.law
zhener@moni.law
**Morrow Ni LLP**
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Defendant*
*Botmakers LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOBIAK, LLC., a Delaware Limited Liability Company;<br><br>Plaintiff,<br>v.<br><br>BOTMAKERS LLC, d.b.a. TARTA.AI, a Delaware Limited Liability Company<br>Defendant. | Case No. 2:23-cv-8604-MEMF (MRW)<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS**<br><br>Date:         October 17, 2024<br>Time:        10:00 a.m.<br>Judge:       The Honorable Maame Ewusi-Mensah Frimpong<br>Location:   Courtroom 8B, 8th Floor, United States District Court, 350 West First Street, Los Angeles, CA, 90012 |

I. **JOBIAK'S OPPOSITION STILL DOES NOT ESTABLISH PERSONAL JURISDICTION OVER BOTMAKERS.**

Conspicuously, Plaintiff Jobiak, LLC's ("Plaintiff" or "Jobiak") Opposition does not substantively address Botmakers' arguments regarding *specific* personal jurisdiction at all. Instead, it conclusorily dismisses the "discussion" as "moot due to the existence of general jurisdiction." Jobiak's Opposition ("Opp."), at 6.

Jobiak insists, in spite of Defendant Botmakers LLC's ("Botmakers" or "Defendant") detailed affidavit evidence otherwise, that there is *general* personal jurisdiction over Botmakers. Opp. at 4-6; Botmakers' Motion to Dismiss ("Mot."), at 5. Jobiak's insistence runs on thin ground.

First, it relies on a screenshot of Tarta.ai's alleged "X" (formerly known as "Twitter") page for which the location pin is apparently "Playa Vista, Los Angeles". Opp. 4-6; Declaration of Omid Khalifeh ("Khalifeh Decl."), at ¶ 4, Ex. A (p.5). But to the best of its recollection, Botmakers does not remember creating this "X" account, so it is unknown whether it is created by Botmakers or whether this is merely a fake account. August 8, 2024 Declaration of Eugene Smirnov ("Smirnov Reply Decl."), ¶ 2. Neither does it run or control the account. Out of good faith, since the filing of Jobiak's Opposition Botmakers has even attempted to use its institutional details such as e-mails, and various telephone numbers of its team, to log in to or regain access to said "X" account, including via the "Forgot password" feature, to check if it can access it, without success. *Id.* ¶ 3. It appears that the account is linked to a phone number or e-mail that Botmakers has no access to. *Id*. In any case, it is evident that the account is completely inactive. It appears to have joined "X" in February 2020, made one single post on February 3, 2020, never posted thereafter, and has only 1 "following" and 3 "followers." Khalifeh Decl. Ex. A.

Second, Jobiak invokes (allegedly)[1] old screenshots of Tarta.ai's LinkedIn page, where allegedly the "headquarters" used to read "Playa Vista, CA." While Botmakers does have access to this account, it is an inactive account which was created years ago. *Id.* ¶¶ 4-6. It is not used for Tarta.ai business; its only post was a post by Eugene Smirnov in June 2023, but that post was

---

[1] Botmakers puts on record that it challenges the authenticity, usability and admissibility of "Wayback Machine" screenshots in any case.

unrelated to Tarta.ai's job listing business, and instead discussed ChatGPT plug-ins. *Id.* ¶ 5, Smirnov Reply Decl. Ex. 1.[2] Botmakers acknowledges that the LinkedIn account could have been tagged to a virtual Playa Vista, California address at its creation years ago, which might explain the outdated association with Playa Vista *Id.* ¶ 6. Further, Jobiak points to certain "[a]ffiliated pages" at the side bar of the LinkedIn account. Opp. at 6; Khalifeh Decl. Ex. A. But these, which appear to be auto-populated into the side bar, are merely other job listing-related pages that were previously created by Botmakers on LinkedIn; they were at the time associated with the same (dormant) Tarta.ai LinkedIn page for general marketing purposes, and they are presently also inactive. Smirnov Reply Decl. ¶ 7. Further, it is uncertain how significant it is that they are tagged "Los Angeles" when Plaintiff's counsel was presumably accessing the page from Los Angeles, as LinkedIn likely automatically tagged the pages "Los Angeles" when viewed from Los Angeles (and would have tagged those pages with other locations when viewed from other locations). *See* Khalifeh Decl. (sign-off); Smirnov Reply Decl. ¶ 7.

But, crucially, *none* of this goes towards the degree of substantial, continuous and systematic contacts that rises to the level of rendering a corporation "at home," which is the test for general jurisdiction.[3] Mot. at 4; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *Overhill Farms Inc. v. W. Liberty Foods LLC,* No. CV 14-03533-RSWL, 2014 WL 4180920, at *6 (C.D. Cal. Aug. 21, 2014) (noting that the general jurisdiction standard is "stringent," "high" and that the contacts should "approximate physical presence"). Nor, for that matter, do they show the *fact* of Botmakers having a "principal place of business" in this district.[4]

---

[2] Unless otherwise indicated, all numerical exhibits herein refer to Exhibits to the August 8, 2024 Declaration of Eugene Smirnov.

[3] Nor, for that matter—although Jobiak does not argue that this goes to specific jurisdiction—do the fact of outdated Playa Vista address information indicate any purposeful direction or aiming at this district or any link to the injuries claimed either. Mot. at 5.

[4] The two tests for a "principal place of business" are the "place of operations test", which locates a corporation's principal place of business in the state which contains a substantial predominance of corporate operations, and the "nerve center test," which is where the majority of its executive and administrative functions are performed (used only when no state contains a

At best, they only show that Botmakers may have forgotten to update certain outdated, years-old information on the internet about its temporary Playa Vista address. Jobiak does not provide law, nor any explanation, showing how selective outdated information about a corporation's former associated location, necessarily pins the fact of general personal jurisdiction on that corporation or dictates its principal place of business, especially in the face of other facts showing a different place of incorporation and showing that all its workers are based elsewhere (as here). Smirnov Mot. Decl. at ¶ 5. If so, the result would be irrational, for then any entity which neglected to update its actual location comprehensively in all the deep corners of the internet, could have general jurisdiction foisted on it as long as a plaintiff trawled for traces left over from the administrative lapse.

Jobiak accuses Botmakers of an "attempt … to evade" general jurisdiction in this district to the extent that Botmakers has updated its incorrect headquarters information to Kyiv, Ukraine. Opp. at 5; Smirnov Reply Decl. ¶ 6. But there has been no evasiveness here. Instead, Botmakers has candidly explained the history of its past association with the Playa Vista address and why this address might have emerged on outdated searches. Gamaniuk Decl ISO Mot. ¶ 3. The further "evidence" of internet traces of Playa Vista that Jobiak now produces simply align with Botmakers' earlier explanations. Indeed, it appears that if anything, *Jobiak*'s singular insistence on this district is opportunistic and deliberately ignores available information, given that Botmakers is incorporated in Delaware and Jobiak *knew* pre-suit to write to it in Delaware. Mot. at 5; Complaint, Ex. C. Indeed, it is no secret that Botmakers' team is based in Ukraine; for example, a quick internet search would have led Plaintiff to a 2022 article on Tarta.ai on the startup-focused "Bootstrappers" blog, in which the team is described to be working from Ukraine and pictured having a team anniversary celebration in Ukraine. Smirnov Reply Decl. ¶ 8, Ex. 2.

Jobiak asks in the alternative, without law or substantiation, for permission to conduct jurisdictional discovery. But "[j]urisdictional discovery is not available as of right, and whether to

---

substantial predominance of the corporation's business activities). *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 500 (9th Cir. 2001).

grant jurisdictional discovery is committed to the Court's discretion." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). "District courts routinely deny such requests." *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 970 (C.D. Cal. 2023). In general, "a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Payrovi v. LG Chem Am., Inc.*, 491 F. Supp. 3d 597, 608 (N.D. Cal. 2020), citing *Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). A district court may deny jurisdictional discovery "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants . . . ." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quotation omitted).

Here, Jobiak does not show how requiring even *more* information from Botmakers would demonstrate facts sufficient to constitute a basis for personal jurisdiction. As Jobiak admits, Botmakers has already come forward with sworn evidence—specifically detailing jurisdictionally-relevant facts, and to clarify and explain that the Playa Vista associations are outdated. Opp. at 11; Mot. at 4-5, 6-7; Smirnov Mot. Decl.; Gamaniuk Mot. Decl.; Smirnov Reply Decl. *See also Perez v. United States,* No. 13CV1417-WQH-BGS, 2014 WL 4385473, at *9 (S.D. Cal. Sept. 3, 2014) (jurisdictional discovery inappropriate because "neither the allegations of the [Complaint] nor the evidence of [Defendant's] past activities in California make a prima facie showing of a 'continuous and systematic' presence … wholly speculative that discovery will lead to evidence necessary to establish general jurisdiction. .. Whether the Court may exercise specific jurisdiction over these Defendants will depend on whether Plaintiffs can allege forum-related activity giving rise to their claims. Jurisdictional discovery is not necessary to accomplish this task."); *Amiri v. DynCorp Int'l, Inc.,* No. 14-CV-03333 SC, 2015 WL 166910, at *6 (N.D. Cal. Jan. 13, 2015) (denying jurisdictional discovery because "Plaintiffs' discovering more … is highly unlikely to yield jurisdictionally relevant facts. … even if Plaintiffs found potentially relevant jurisdictional facts through jurisdictional discovery, there is no basis aside from speculation for concluding

those facts would render this the kind of 'exceptional case' in which exercising general jurisdiction outside the paradigm all-purpose forums is appropriate.").

Indeed, where "plaintiff has not demonstrated that resolution of the jurisdictional issue should be delayed and [the defendant] forced to incur discovery costs, his request for discovery is denied." *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 998 (C.D. Cal. 2013). Here, Jobiak has not demonstrated why their selective grasping at outdated online information, the existence of which is already explained, must commit Defendant to further costs and delay resolution.

## II. JOBIAK'S SELECTIVE RESPONSES TO BOTMAKERS' ARGUMENTS DO NOT SAVE THEIR COPYRIGHT-RELATED CLAIMS FROM DISMISSAL.

Tellingly, Jobiak does not respond at all to most of Botmakers' copyright arguments. Most glaringly, Jobiak does not address the fundamental problem of how every single one of Jobiak's examples of Botmakers' "infringing" listings in fact **pre-date** the Jobiak listing they allegedly copied. Mot. at 16 (Table). And in response to Botmakers' various arguments highlighting problems with the authorship, copyrighted date ranges and time of registration of Jobiak's automated database, Jobiak's only response is to generally allege that "an automated database can be copyrightable," which is no response at all. Opp. at 7; Mot. at 12-16.

And in response to Botmakers' argument that *individual job listings* are not protected by Jobiak's automated database copyright registration, Jobiak builds a strawman by arguing that copying individual job listings is not "de minimis." Opp. at 8. That is *not* Botmakers' argument; Botmakers instead argues that individual job listing information within a compilation database is not protected by the compilation database copyright. Mot. 14-15. Indeed, Jobiak misconstrues the law, asserting that "Jobiak's copyright covers a database that includes these individual listings. Copying any part of a copyrighted database, even if it comprises individual listings, still constitutes copyright infringement." Opp. at 8. That is legally incorrect, for, in a compilation, "only the compiler's selection and arrangement may be protected; the raw facts may be copied at will." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 350 (1991). Indeed, Jobiak itself describes its automated database as " a compilation of database ***information***

*including* descriptions, categories, ***job listings***, and layout designs." Complaint, at ¶ 16 (emphasis added). Even had Botmakers done so, raw information, such as job listings, may be copied.

Further, and significantly, Jobiak fails to address and is not in any case entitled to its claims for statutory damages or attorney's fees for copyright infringement. *See, for example,* Complaint, at ¶¶ 37, 38, 42, 43, Prayers G and I; Mot. at 1. Pursuant to 17 U.S.C. § 412(2), "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505" will be granted where "any infringement of copyright commenced after first publication of the work and before the effective date of its registration unless such registration is made within three months after the first publication of the work." Here, Jobiak did *not* register its automated database copyright with respect to the allegedly infringed-upon listings, before commencement of the alleged infringement of the same. Indeed, it did not register the relevant copyright at all. For Jobiak only alleges registration of a database including published updates between September 1, **2022** to November 30, **2022**. Complaint, Ex. A. That registration is dated June 20, 2023, more than three months *after* publication of the allegedly copyrighted content from 2022. *Id.* And Jobiak's allegedly infringed-upon listings span July-September **2023**, and remain unregistered. Complaint, Ex. B; Mot. at 16 (Table). Furthermore, nor does Jobiak show that it registered the relevant copyright within three months after its first publication of the relevant allegedly infringed-upon listings. Again, the allegedly infringed-upon listings span posting dates of July-September **2023** (presumably their date of first publication[5]) but Jobiak has not alleged any copyright registration as to database material for the July-September 2023 time period, in the 3 months thereafter. Therefore, on the face of the pleadings, Jobiak is not entitled to any statutory damages or attorney's fees.

III.   **JOBIAK'S OTHER ARGUMENTS ALSO FAIL.**

Jobiak argues that "Jobiak's ALLJOBS database is not generally available to the public; instead, individuals or business entities are required to obtain a license and access credentials to

---

[5] Although Botmakers makes no admission at this stage, given that it lacks information.

use specified data, and access to and use of the data is restricted in a variety of ways." Opp. at 9. But there are a number of problems with this argument. First, and notably, the assertion that "obtaining a license and access credentials to use specified data" were required is not in the pleadings. Second, Jobiak's argument is contradicted by its own Complaint and publicly available information. Jobiak itself provides as examples of the allegedly infringed-upon, or copied, listings, listings that appear to be available on public websites. Complaint, Ex. B. Jobiak also alleges that its work involves "quickly and directly publishing job postings on Google." Complaint, ¶¶ 1, 15; *Id.* ¶ 2 (in describing Defendant's acts in relation to posting job listings, stating that Defendant "operates in a similar line of business as Plaintiff"); *see also* Opp. at 10 ("it is true that Jobiak intends for the public to access its services"). In fact, its ALLJOBS website Jobiak refers to, with all its job listings, may indeed be accessed by the public at https://alljobs.ai. August 9, 2024 Declaration of Xinlin Li Morrow, Ex. 1 (screenshot of website as accessed by Botmakers' counsel, with example of viewable job search results and job listings). In short, Jobiak itself pleads that it posts job listings that are available to the public, provides examples of such posted and allegedly copied listings, but then suddenly alleges for the first time now that such material required "access credentials" and a "license" (quite apart from the inherent lack of logic in posting job listings that are *not* open to the public).

  Jobiak also seeks leave to amend to cure its admittedly "formulaic" recitation of damages under the CFAA. Opp. at 9-10. This is a carbon copy of its response in the *Aspen* case, down to the admission of being "formulaic." Morrow Decl. ISO Mot., Ex. 3, at 12. Jobiak also seeks leave to amend in a few other instances. Defendant submits that Plaintiff should not be granted leave to amend its Complaint at all, even under the liberal standard, because amendment would be futile.

  Finally, Jobiak conclusorily shrugs off all of Botmakers' highlighted comparisons to the almost-identical *Aspen* case, which was decided against Jobiak, with the conclusory throwaway that *Aspen* was "significantly different." Jobiak does not explain how or why. Opp. at 10-11.

## IV. CONCLUSION

  For these reasons, Botmakers respectfully requests that the Court grant its motion.

Case No. 2:23-cv-8604-MEMF     7     Reply to Opposition to Motion to Dismiss

Respectfully Submitted,

DATED: August 9, 2024

**MORROW NI LLP**

By: _____/s/ Xinlin Li Morrow_____

Xinlin Li Morrow
Zhener Low
xinlin@moni.law
zhener@moni.law
Morrow Ni LLP
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Defendant Botmakers LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2024, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service on this date of the public copy of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.

By:   */s/ Xinlin Li Morrow*

Xinlin Li Morrow

Case No. 2:23-cv-8604-MEMF            1            Reply to Opposition to Motion to Dismiss