UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOBIAK, LLC., a Delaware Limited Liability Company,

                      Plaintiff,

         v.

BOTMAKERS LLC, d.b.a.
TARTA.AI, a Delaware Limited Liability Company,

                  Defendant.

Case No.:  2:23-cv-08604-MEMF-MRW

**ORDER GRANTING MOTION TO DISMISS [ECF NO. 20]**

    Before the Court is the Motion to Dismiss filed by Defendant Botmakers LLC. For the reasons stated herein, the Court hereby GRANTS the Motion to Dismiss.

///

1

1

**I.    Background**

2

**A.  Factual Background**[1]

3      Plaintiff Jobiak, LLC ("Jobiak") is an AI-based recruitment platform and company "that

4    offers a unique service of quickly and directly publishing job postings on Google." Compl. ¶ 1.

5    Jobiak uses machine learning technology to offer an automated database for job postings. *Id.*

6    Jobiak's proprietary technology allows it to search online jobs and automate the conversion and

7    optimization of job descriptions to meet Google's schema requirements. *Id.* ¶ 15. Jobiak has

8    intellectual property rights in its automated database, entitled "ALL JOBS by Jobiak." *Id.*

9    Specifically, Jobiak holds a copyright registration for "ALL JOBS by Jobiak," published updates

10   from 9/1/2022 to 11/30/2022. ECF No. 1-1 at Exhibit A.

11     Defendant Botmakers LLC ("Botmakers") operates a similar line of business as Jobiak

12   through its website Tarta.Ai (https://tarta.ai). Compl. ¶¶ 2, 19.

13     In January 2023, Jobiak learned that Botmakers was using Jobiak's protected database for

14   commercial purposes without Jobiak's permission. *Id.* ¶ 18. Jobiak believes that Botmakers has been

15   "scraping"[2] the data from Jobiak's website and using the information on its website. *Id.* ¶ 19, ECF

16   No. 1-1 at Exhibit B. Botmaker's infringement is clear by its use of a layout similar to Jobiak's, as

17   well as the use of the "dummy" search key title words at the end of each job description, which have

18   no relation to the position listed. *Id.* ¶ 20.

19

**B.  Procedural History**

20     Jobiak filed its Complaint on October 12, 2023. Compl. Jobiak asserts the following five[3]

21   causes of action against Botmakers in its Complaint: (1) Copyright Infringement under 17 U.S.C. §

22   501 (Compl. ¶¶ 28–44); (2) Computer Fraud and Abuse Act – 18 U.S.C. § 1030 et seq. ("CFAA")

23

24   _____

25   [1] The following factual allegations are derived from the allegations in Plaintiff's Complaint, ECF No. 1
     ("Compl."), unless otherwise indicated. For the purposes of this Motion, the Court treats these factual
     allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these
26   allegations and is therefore not—at this stage—finding that they are true.
     [2] "Data scraping" is defined as "a technique in which a computer program extracts data from human-readable
27   output." Cambridge English Dictionary, https://dictionary.cambridge.org/us/dictionary/english/data-scraping.
     [3] In the caption of the Complaint, Jobiak only lists four causes of action. However, the body of the Complaint
28   contains a fifth cause of action for violation of the Digital Millenium Copyright Act.

1   (*id.* ¶¶ 45–53) (3) California Comprehensive Computer Data Access and Fraud Act – Penal Code §

2   502 *et seq.* ("CDAFA") (*id.* ¶¶ 54–64); (4) Unfair Competition under California Business and

3   Professions Code § 17200 ("UCL") (*id.* ¶¶ 65–70); and (5) The Digital Millennium Copyright Act

4   ("DMCA") – 17 U.S.C. § 1201 *et seq.* (*id.* ¶¶ 71–76).

5        Botmakers filed the instant Motion to Dismiss on May 8, 2024. ECF No. 20 ("Motion" or

6   "Mot."). Jobiak filed its opposition on May 22, 2024. ECF No. 21 ("Opposition" or "Opp'n"). On

7   August 9, 2024, Botmakers moved ex parte for leave to file its reply, as the deadline had passed.

8   ECF No. 25. The Court granted Botmakers's ex parte, ECF No. 26, and Botmakers filed its reply on

9   August 13, 2024, ECF No. 27 ("Reply").

10       The Court shared a tentative ruling with the parties in advance of a hearing scheduled for

11  October 31, 2024. The parties then stipulated to the tentative order and requested that the Court

12  vacate the hearing. *See* ECF No. 29. Thus, the Court did not hold a hearing.

13  **II.    Applicable Law**

14      **A.  Rule 12(b)(2) Standard**

15       A defendant can move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). Fed.

16  R. Civ. P. 12(b)(2). The party asserting the existence of jurisdiction bears the burden of establishing

17  it. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). "Because there is no

18  statutory method for resolving this issue, the mode of its determination is left to the trial court." *Data*

19  *Disc, Inc. v. Sys. Tech. Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977). The procedural

20  mechanism through which the district court determines personal jurisdiction determines the burden

21  the plaintiff is required to meet. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). In a case

22  involving the presentation of affidavits only, "a plaintiff must make only a prima facie showing of

23  jurisdictional facts through the submitted materials in order to avoid a defendant's motion to

24  dismiss." *Id*.; *see also* § 1351 Motions to Dismiss—Lack of Jurisdiction Over the Person, 5B Fed.

25  Prac. & Proc. Civ. § 1351 (4th ed.) ("The court may receive and weigh the contents of affidavits and

26  any other relevant matter submitted by the parties to assist in determining the jurisdictional facts").

27       Uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between

28  parties over statements contained in affidavits must be resolved in the plaintiff's favor."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, "mere allegations of the complaint, when contradicted by affidavits, are [not] enough to confer personal jurisdiction of a nonresident defendant." *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967). Depending on the nature and extent of a defendant's contacts, if any, with a forum state, the appropriate exercise of personal jurisdiction may be either general—that is, the party is subject to any claims in that forum—or specific—that is, the party is subject only to claims arising out of its forum-related activities. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

To establish personal jurisdiction over a defendant, a plaintiff must show both that the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction is consistent with federal due process requirements. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006). California's long-arm statute is coextensive with the scope of what is permitted by due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Civ. Proc. Code § 410.10). Constitutional due process requires that jurisdiction be exercised over a nonresident party only if that party has "minimum contacts" with the forum, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985).

### B. Leave to Amend and Jurisdictional Discovery

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

District courts "may allow discovery to aid in determining whether . . . [they] have in personam or subject matter jurisdiction," and the "matter is generally left to the discretion of the trial court." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). "Discovery . . . 'should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" *Id.*

1    **III.    Discussion**

2        Botmakers argues that the Court should dismiss the action because the Court lacks personal

3    jurisdiction over Botmakers. Botmakers argues that even if personal jurisdiction is found, the Court

4    should still dismiss Jobiak's Complaint because Jobiak fails to state its causes of action under Rule

5    12(b)(6) of the Federal Rules of Civil Procedure. As the Court explains further below, the Court

6    finds that the Complaint has not sufficiently pleaded personal jurisdiction over Botmakers. The

7    Court therefore declines to reach the issues raised under Rule 12(b)(6).

8    **A.  The Court Lacks Personal Jurisdiction Over Botmakers**

9            i.   Jobiak has not established general personal jurisdiction over Botmakers exists.

10       If general jurisdiction is established, a party may be "haled into court in the forum state to

11   answer for any of its activities anywhere in the world," and its contacts with the forum state need not

12   relate to the claim asserted. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014)

13   (quoting *Schwarzenegger*, 374 F.3d at 801). General jurisdiction exists only when a party's contacts

14   with the forum state are "substantial or continuous and systematic" so as to "approximate physical

15   presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.

16   2000) (internal quotation marks omitted) overruled in part on other grounds by Y*ahoo! Inc. v. La

17   Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). Generally, a forum has

18   general personal jurisdiction over a corporation if the corporation is either incorporated in or has its

19   principal place of business in the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–38

20   (2014) (noting that, under *Goodyear*, the forum of incorporation or principal place of business was

21   paradigmatic of a forum which would have general jurisdiction over a defendant).[4]

22

23   [4] The general jurisdiction test seeks to find the forum(s) where a defendant is "at home." For individuals, "the
     paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler*, 571 U.S. at
24   137. Corporations do not have "domiciles" in the strict sense of the word, but the paradigm forum for general
     jurisdiction over a corporation seeks to find an "equivalent place, one on which the corporation is fairly
25   regarded as at home." *Id.* The test for a corporation's domicile "mirrors" the test for determining a
     corporation's citizenship. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every
26   State and foreign state by which it has been incorporated and of the State or foreign state where it has its
     principal place of business"). There is thus some ambiguity as to whether the test for determining the states in
27   which general jurisdiction can be exercised over other entities—such as limited liability companies—should
     also mirror the test for determining such an entity's citizenship.
28

5

1   The parties do not dispute that Botmakers is not organized under the laws of California, and

2   so, the key question is whether Botmakers has its principal place of business in California. A

3   corporation's principal place of business is the state "containing a substantial predominance of

4   corporate operations." *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009)

5   (internal quotation marks omitted). If no such state exists, the principal place of business is in the

6   state where "the majority of its executive and administrative functions are performed." *Id.*

7   In the Complaint, Jobiak asserts that Botmakers has its principal place of business in Playa

8   Vista, California. Compl. ¶ 6. In his declaration, Botmakers Chief Operations Officer ("COO"),

9   Eugene Smirnov, testifies that Botmakers's principal place of business is in Ukraine, and that

10   Botmakers does not have any office or any employees in California. ECF No. 20-2 ("Smirnov

11   Decl.") ¶¶ 4, 5. Smirnov further testifies that Botmakers only has independent contractors, all of

12   whom are located in Ukraine. *Id.* at ¶ 5. Botmakers's president and founder, Oleksandr Gamaniuk,

13   also testified that, in January 2020, he created a temporary association between Botmakers and his

14   temporary residence in Playa Vista, California while he was in the United States for a two-month

15   visit. ECF No. 20-3 ("Gamaniuk Decl.") ¶ 3. Gamaniuk removed the association in 2020, and

16

17   _____

18   The Ninth Circuit has not affirmatively ruled on this question. However, the Court sees good reason to apply the same test. General personal jurisdiction exists where the "party's contacts with the forum state are

19   'substantial or continuous and systematic' so as to 'approximate physical presence' in the state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal quotation marks omitted).

20   As such, the entity type if of no moment—the real question is whether the entity's contacts with the forum state render the entity "at home" in the state, and regardless of the type of entity, the general test aptly gets to

21   the heart of the question. The citizenship test for unincorporated entities does not necessarily get to the heart of question of where an unincorporated entity is at home. For example, limited liability companies are citizens

22   of every state of which their members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). (The parties do not appear to assert what Botmakers's citizenship is.) One can easily

23   imagine a scenario where a limited liability company has a "silent" member who is a citizen of one state but the limited liability company has no connection to that state except for that member. In such a situation, it

24   could not fairly be said that the limited liability company is "at home" in the state. This is consistent with the decisions of several district courts within this circuit and the guidance of the leading civil procedure treatise.

25   *See Grootonk v. Labrie Env't Grp., LLC*, No. 822CV01868FWSADS, 2023 WL 5420299, at *3 (C.D. Cal. July 20, 2023) ("Courts generally apply this same approach to non-corporate business entities."); *Nichols v.*

26   *Guidetoinsure, LLC,* No. 23-CV-04920-PCP, 2024 WL 1643701, at *2 (N.D. Cal. Apr. 15, 2024) (applying general rule in analyzing whether the court has general personal jurisdiction over a limited liability company

27   defendant); Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 3-E (contemplating that it is "unlikely

28   that the type of entity involved should affect the jurisdictional analysis" "[s]ince the rationale for imposing such a test is where the entity is 'at home' in terms of its business 'domicile.'").

Botmakers does not do any business in Playa Vista. *Id.* In its Opposition, Jobiak points to LinkedIn
and X (formerly Twitter) accounts for Tarta.Ai, which show that, as of April 6, 2024, Tarta.Ai listed
its headquarters in California. ECF No. 21-1 ("Khalifeh Decl.") ¶ 4, Ex. A. A couple of months later,
after the filing of the current Motion, the Tarta.Ai LinkedIn page reflected that Tarta.Ai's
headquarters were in Ukraine. *Id.* ¶ 5, Ex. B. Jobiak also pointed to LinkedIn pages related to
Tarta.Ai which list its headquarters as Los Angeles. *Id.* ¶ 6, Ex. C. In response, Smirnov testified
that Botmakers does not control the X account Jobiak points to. ECF No. 27-1 ("Suppl. Smirnov
Decl.") ¶ 3. All of Botmakers's attempts to access the X account failed. *Id.* Smirnov also testified
that Botmakers created the LinkedIn page years ago, and that insofar as the LinkedIn page identified
Playa Vista as Botmakers's headquarters, that is incorrect and Botmakers immediately updated the
LinkedIn page upon realizing the mistake. *Id.* ¶ 6. Smirnov also testified that, to his knowledge,
LinkedIn automatically tagged the Tarta.Ai associated pages with "Los Angeles" because the page
was viewed from Los Angeles by Jobiak's counsel. *Id.* ¶ 7. Smirnov testified that these pages are
also inactive and were created for general marketing purposes. *Id.*

Here, Jobiak has not met its burden of establishing a prima facie case that Botmakers has its
principal place of business in California. Although Botmakers temporarily listed the Tarta.Ai
headquarters as being in California on LinkedIn and X,[5] this listing does not demonstrate that
Botmakers's contacts with California are so "continuous and systematic" as to render Botmakers
"essentially at home" in California, especially in light of evidence that Botmakers carries out its
operations entirely in Ukraine. Jobiak also points to LinkedIn pages for associated LinkedIn pages,[6]
but there is no evidence showing that these associated pages are not run by separate subsidiaries of
Botmakers. This is important because "[w]here . . . the defendant's alleged contacts [with the forum]
are through its corporate subsidiaries, the [c]ourt must engage in a preliminary inquiry to determine

---

[5] The Court recognizes that Botmakers has argued that it does not have control over the Tarta.Ai X account.
However, for the sake of argument, the Court assumes that Botmakers created the X account for Tarta.Ai and
listed the headquarters as being in California.

[6] LinkedIn includes a sidebar listing LinkedIn accounts that are affiliated with the account the viewer is
viewing. According to LinkedIn, these affiliated pages are "linked to another LinkedIn Page by the LinkedIn
Support team and represents a parent or subsidiary organization." Affiliated LinkedIn Pages,
https://www.linkedin.com/help/linkedin/answer/a545807.

1    whether the subsidiaries' contacts are properly attributed to the defendant." *Doe v. Unocal Corp.*,

2    248 F.3d 915, 925 (9th Cir. 2001) *abrogated on other grounds by Williams v. Yamaha Motor Co.*,

3    851 F.3d 1015 (9th Cir. 2017). Even assuming these affiliated pages are run by Botmakers,[7]

4    considering the evidence on the record, it is insufficient for prima facie showing that Botmakers has

5    its principal place of business in California. Importantly, Jobiak has not countered Botmaker's

6    evidence that it does not have any offices or employees in California, and as such, there is no

7    evidence showing that California is the state in "containing a substantial predominance of

8    [Botmakers's] operations" or the state in which "the majority of its [Botmakers] executive and

9    administrative functions are performed." *Davis*, 557 F.3d at 1028.

10        General jurisdiction may also be found in the "exceptional case" where "a corporation's

11    operations in a forum other than its formal place of incorporation or principal place of business may

12    be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG*

13    *v. Bauman*, 571 U.S. 117, 139 n. 19 (2014). In *Perkins*, the Supreme Court found an exceptional

14    case where the defendant company halted its operation in the Philippines during the Japanese

15    occupation of the island. *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447 (1952). During this

16    time, the president of the company returned to his home in Ohio, where he maintained an office and

17    conduct business on behalf of the company, discharging his duties as president. *Id.* at 447–48. Here,

18    there are no allegations such exceptional circumstances present themselves. Although Gamaniuk

19    admits that he is currently in the United States because of the Russian invasion of Ukraine, he is not

20    actively involved in Botmakers's business activities, and does not draw a salary from Botmakers.

21    Gamaniuk Decl., ¶¶ 4–7.

22        ii.   Jobiak has not established specific personal jurisdiction exists over
             Botmakers.

23

24

---

25    [7] Jobiak points out that the affiliated pages share the same operating logo as Tarta.Ai, and as such, are
26    connected to Tarta.Ai. Opp'n at 5. Botmakers does not contest that there is a connection between Botmakers
      and the affiliated pages. *See generally*, Reply. Instead, Botmakers only states that the pages may be tagged
27    with "Los Angeles" because the page is being viewed in Los Angeles. Suppl. Smirnov Decl., ¶ 7. If this were
      true, however, all of the affiliated and similar pages would reflect "Los Angeles, CA," but some of the pages
28    show other locations, including Ohio and Delaware. *See* Opp'n at 6 (Driver Jobs 4U tagged as "Claymont,
      CA," and TARTA tagged as "Toledo, Ohio").

> The Ninth Circuit employs a three-prong test for specific personal jurisdiction:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation omitted).

"If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155 (internal quotation marks omitted). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. The first prong may be satisfied with facts sufficient to show either "purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, 'are, in fact, two distinct concepts.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) *as amended, abrogated on other grounds as recognized by Axiom Foods*, 874 F.3d at 1069–70 (quoting *Pebble Beach*, 453 F.3d at 1155).

### 1.  *Purposeful direction or purposeful availment*

Courts in the Ninth Circuit "generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Here, Jobiak's claims are tortious in nature, so the Court employs the purposeful direction test. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("Because Mavrix has alleged copyright infringement, a tort-like cause of action, purposeful direction 'is the proper analytical framework'").[8]

---

[8] Jobiak's claims for Computer Fraud and Abuse Act – 18 U.S.C. § 1030 et seq., California Comprehensive Computer Access and Fraud Act – Penal Code § 502 et seq., and Unfair Competition under California Business and Professions Code § 17200 also sound in tort and not contract because they do not relate to obligations that arise from a contractual agreement as opposed to a statutory mandate. *See Young v. Bank of America*, 141 Cal. App. 3d 108, 113 (1983) ("This is an action sounding in tort rather than in contract because it seeks damages for a violation of a duty imposed by statute").

1    Purposeful direction requires that "the defendant . . . must have (1) committed an intentional

2    act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

3    suffered in the forum state." *Id.* (internal quotation marks omitted). The "express aiming" prong

4    requires more than just the defendant's awareness that the plaintiff has strong ties to forum. *See*

5    *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (stating that the

6    Supreme Court rejected the Ninth Circuit's "individualized targeting" test that held the express

7    aiming requirement was satisfied where the defendant had knowledge of the plaintiff's strong

8    connections to the forum, and it was foreseeable that plaintiff would suffer harm in the forum).

9    Indeed, something more is needed, *id.*, because the "plaintiff cannot be the only link between the

10   defendant and the forum. Rather it is the defendant's conduct that must form the necessary

11   connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571

12   U.S. 277, 285 (2014).

13   With respect to the question of whether the defendant committed an intentional act expressly

14   aimed at the forum state (the first and second purposeful direction elements), Jobiak alleges that

15   Botmakers "directed their wrongful actions towards Jobiak LLC, a company with clients, contracts,

16   and employees located within this judicial district." Compl. ¶ 11. This is, by itself, insufficient to

17   establish that Botmakers's conduct was expressly aimed at California. Jobiak also alleges that

18   Botmakers "owns and operates the website www.california.tarta.ai, which caters to the California

19   job market." Compl. ¶ 12. Contrary to Botmakers's argument otherwise, Mot. at 6, this allegation

20   describes the type of conduct that can support a finding of specific jurisdiction. *See Will Co., Ltd. v.*

21   *Lee*, 47 F.4th 917, 922–23 (9th Cir. 2022) (stating that the operator of a website "must have both

22   actively 'appeal[ed] to' and 'profit[ed] from' an audience in that forum"). By pointing to

23   Botmakers's intentional creation of landing pages for specific states, such as California, in a bid to

24   cater to the markets in those states, Jobiak has made a prima facie showing that Botmakers has

25   expressly aimed its conduct at California.

26

27

28

1      Botmakers argues that Jobiak's allegations are insufficient to show that Botmakers

2 "expressly aimed" its conduct at the forum state, Mot. at 7.[9] However, Botmakers's authorities do

3 not support its point. First, Botmakers cites *L.A. Gem* for the proposition that a person must do more

4 than just place information on the internet. *Id.* Unlike the defendant in *L.A. Gem*, Botmakers has not

5 merely put out listings on the internet, but has created a separate landing page for California. *L.A.*

6 *Gem & Jewelry Design, Inc. v. Reese*, No. CV 15-03035-SJO, 2015 WL 4163336, at *5 (C.D. Cal.

7 July 9, 2015). Similarly, in *Briskin*, the defendant merely operated a website that could be accessed

8 in California, but there was no conduct specifically aimed at California. *Briskin v. Shopify, Inc.*, 87

9 F.4th 404, 417 (9th Cir. 2023). Finally, Botmakers also argues that nothing sets apart Botmakers's

10 treatment of California from other forums, as Botmakers has sub-domains available for most states.

11 Mot. at 8. Botmakers derives its argument from the following language in *Briskin*: "And that

12 'substantial connection' must be something substantial beyond the baseline connection that the

13 defendant's internet presence already creates with every jurisdiction through its universally

14 accessible platform." *Briskin*, 87 F.4th at 420. As an initial matter, *Briskin* has been vacated and is

15 not binding on this Court. *See Briskin v. Shopify, Inc.*, 101 F.4th 706 (9th Cir. 2024). Secondly,

16 creating a sub-page for some states and not others is action that goes "beyond the baseline

17 connection that defendant's internet presence already creates . . . ." The language in *Briskin* is meant

18 to clarify that a defendant's mere online presence, which creates a connection with every

19 jurisdiction, is insufficient for personal jurisdiction. It is not meant to impose a requirement that a

20 plaintiff must show that the defendant treats the forum *completely* differently from every other

21 forum. It is entirely possible that, through similar or the same conduct, a defendant targets more than

22 one forum.

23      With respect to whether the defendant's act caused harm that the defendant knows is likely to

24 be suffered in the forum state (the third element of purposeful direction), in light of the allegations in

25 the Complaint, the Court can reasonably infer that Botmakers knew that the harm it caused would be

26 felt in California because Botmakers has taken business that may otherwise have been Jobiak's. *See*

27

28   [9] The Court notes that Botmakers cites to *Aspen* for several of its arguments, including this one. But *Aspen* is not binding on this Court.

11

1  Compl. ¶¶ 3 (alleging that as a result of Botmakers's conduct, Jobiak has suffered financial losses

2  and a decline in market share), 11 (alleging that Jobiak has clients in this judicial district).[10]

3                    2.   *The claims do not arise out of Defendant's forum related activities.*

4         Although Jobiak satisfies the first prong of the three-prong test articulated in

5  *Schwarzenegger*, Jobiak's Complaint fails in establishing the second prong—that the claims "arise

6  out of or relate to" Botmakers's "forum-related activities." *See Schwarzenegger*, 374 F.3d at 802.

7  Claims "arise out of" a defendant's contacts with the forum state when there is a causal connection

8  between the contacts and the claims. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592

9  U.S. 351, 362 (2021). Although there is no precise definition of when a claim is "related to" a

10  defendant's contacts with the forum state, the Supreme Court has noted that the "related to" test is

11  satisfied where a company serves a market for a product in the forum state and there are issues with

12  the product in that state. *Id.* at 363. Thus, it is clear that causal relationship is not necessary for a

13  finding that a claim is related to a defendant's forum-related activities, but there must be some

14  "'activity [or] occurrence' involving the defendant that takes place in the state." *Id.* at 362.

15         Jobiak generally alleges that Botmakers used its data without Jobiak's permission and

16  includes three screenshots of Botmakers's infringing posts. Compl. ¶ 18, ECF No. 1-1 at Ex. B.

17  However, only one of the attachments shows an allegedly infringing post that targets California, the

18  other two allegedly infringing posts target North Carolina and Arkansas. *See generally*, ECF No. 1-1

19  at Ex. B. The California listing is dated August 29, 2023, which is outside the time frame of Jobiak's

20  copyright registration[11] covering the time period from September 1, 2022 to November 30, 2022.

21  Mot. at 6 –7 n.3; *see* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices (3d

22  ed., 2021), § 1112 ("This group registration option may be used to register a specific version of a

23

24  _____

[10] The Court need not consider whether Jobiak must show a higher level "brunt of harm" because, even
25  assuming this requirement is met, Jobiak fails to satisfy all three prongs of the Ninth Circuit's test for specific
personal jurisdiction. *See* Mot. at 9 (arguing that Jobiak has not shown the higher level of harm required); *see*
26  *also Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002) (noting there is a conflict between Supreme
Court cases as to whether the effects test "requires that the brunt of the harm have occurred within the forum
27  state, or merely that some significant amount of harm have occurred there.").
[11] "A valid copyright registration provides a copyright holder with important sometimes necessary legal
28  advantages. It is, for example, a prerequisite for bringing a 'civil action for infringement' of the copyrighted
work." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 599 U.S. 178, 181 (2022).

1  database that existed on a particular date and/or the subsequent updates or revisions to that database

2  *within a three-month period*. It may be used to register a group of updates or revisions to a single-

3  file or a multi-file database, regardless of whether prior versions of the database have been registered

4  before.") (emphasis added).[12] The Complaint does not include any other allegations that could serve

5  as a basis to find that Jobiak's copyright infringement claim either "arises out" or is "relate to"

6  Botmakers's conduct in California. For example, the Complaint does not include any allegations that

7  there is a causal connection between Botmakers's California-related activities and Jobiak's copyright

8  infringement claim. *See generally*, Compl. The Complaint also does not include any allegations that

9  Botmakers undertook any activity in California that relates to Jobiak's copyright infringement claim.

10  Thus, the Court finds that Jobiak has failed to allege that its copyright claim either arises out of or

11  relates to Botmakers's California-related activities.

12       Moreover, Jobiak has also failed to allege that its other claims against Botmakers, like the

13  Computer Fraud and Abuse Act claim or the California Comprehensive Computer Access and Fraud

14  Act are based on or related to Botmakers's forum-related activities as there are no allegations that

15  Jobiak's database or website is hosted on servers in California, so none of the web scraping or

16  unauthorized access took place in California. *See generally*, Compl. Moreover, there are no

17  allegations that there is a causal connection between Botmakers's California-related activities and

18  Jobiak's CFAA or CDAFA claims. *See generally*, Compl. Finally, the Complaint also does not

19  include any allegations that Botmakers undertook any activity in California that relates to Jobiak's

20  CFAA or CDAFA claims.[13]

21       For the foregoing reasons, the Court finds that Jobiak has not sufficiently alleged facts

22  showing that the Court has specific personal jurisdiction over Botmakers.[14]

23

_____

24  [12] Jobiak did not offer any opposition to Botmakers's argument that there is no specific personal jurisdiction because Jobiak argued that there was general personal jurisdiction, so the issue of specific personal

25  jurisdiction was moot. Opp'n at 6.

26  [13] Jobiak's UCL and DMCA claims are based on the same conduct as its copyright infringement, CFAA, or CDAFA claims, and as such, a separate analysis for specific personal jurisdiction as to those claims is not

27  necessary.

[14] If the Court finds that it lacks personal jurisdiction over Botmakers, it does not need to reach Botmakers's

28  remaining arguments. The Court also need not consider whether the exercise of personal jurisdiction would

1          iii.    The Court grants Jobiak's request for limited scope discovery and permits Jobiak to amend its complaint.

2          Jobiak requests that if the Court grants the Motion on jurisdictional grounds, that the Court

3   also grant Jobiak leave to conduct limited discovery on the issue of jurisdiction. Opp'n at 11. Here,

4   the Court finds that limited discovery could aid Jobiak in curing the deficiencies and alleging

5   sufficient jurisdictional facts. While Botmakers argues that Jobiak has not shown that more

6   information would demonstrate sufficient facts to constitute a basis for personal jurisdiction, Reply

7   at 4, additional facts concerning whether Botmakers has made infringing posts targeting California

8   within the relevant time frame could establish specific personal jurisdiction. Additional facts

9   concerning Botmakers's scraping and access of Jobiak's data could also uncover grounds for

10  specific personal jurisdiction regarding Jobiak's CFAA or CDAFA claim. For example, Jobiak could

11  discovery that Botmakers's scraping activities took place in California.

12         Given the "extreme liberality" with which courts generally grant leave to amend complaints,

13  the Court finds that it appropriate to GRANT Jobiak's request to amend its Complaint and conduct

14  limited scope discovery. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend]

15  when justice so requires"); *see also Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir.

16  2018) (Noting that the policy behind Rule 15(a)(2) of the Federal Rules of Civil Procedure "is to be

17  applied with extreme liberality") (internal quotation marks omitted).

18

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27

28  comport with notions of fair play and substantial justice, as Jobiak has not satisfied the second prong of the personal jurisdiction test.

14

1

### IV.    Conclusion

2      For the foregoing reasons, the Court hereby GRANTS the Motion and GRANTS Jobiak

3  leave to amend and limited scope discovery for the purposes of establishing jurisdiction.

4

5      IT IS SO ORDERED.

6

7  Dated: October 31, 2024

8                                          MAAME EWUSI-MENSAH FRIMPONG

9                                              United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15